# EXHIBIT A

009
141889
$200

FILED

OCT 23 2009

CIVIL DIVISION
SOMERSET COUNTY

①

**FLORIO PERRUCCI STEINHARDT & FADER, L.L.C.**
218 Route 17 North, Suite 300
Rochelle Park, New Jersey 07662
(201) 843-5858
Attorneys for Plaintiff, Advanced Technologies and
    Installation Corporation d/b/a Telecom Network Specialists

---

| | |
|---|---|
| **ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS, a Washington Corporation,**<br><br>        **Plaintiff,**<br><br>    **vs.**<br><br>**NOKIA SIEMENS NETWORKS US, LLC, a Delaware Limited Liability Company,**<br><br>        **Defendant.** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY**<br><br>**Docket No.:** L 1940-09<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, **Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists**, by way of Complaint against **Defendant, Nokia Siemens Networks US, LLC**, says as follows:

<u>PARTIES</u>

1.    At all times relevant hereto, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists ("TNS"), a Washington corporation, was, and still is, in the business of supplying telecommunications infrastructures, including, but not limited to, cellular telephone towers, inclusive of certain associated materials and equipment.

2.    At all times relevant hereto, Defendant, Nokia Siemens Networks US, LLC ("NSN"), a Delaware corporation authorized to do business in New Jersey, was

√

contractually engaged by various telecommunications network operators to supply telecommunications infrastructures, inclusive of cellular telephone towers and appurtenances.

## FACTUAL BACKGROUND

### The Parties' Master Services Agreement

3.     NSN negotiated with TNS for services, inclusive of certain associated materials and equipment, needed by NSN in order to supply its customers, *i.e.*, T-Mobile Wireless and T-Mobile USA (collectively "T-Mobile"), with telecommunications infrastructures at various locations ("TNS Services").

4.     John J. McCann ("McCann"), TNS Chief Executive Officer located at TNS' New Jersey office in Raritan, New Jersey, represented TNS in the contract negotiations with NSN's representatives.

5.     On or about May 21, 2007, the aforesaid negotiations resulted in the mutual execution of a written Master Services Agreement ("MSA") between the parties.

6.     McCann executed the MSA on behalf of TNS while located at TNS' New Jersey headquarters.

7.     Joe Kaeser, head of NSN's New Jersey operations, and John M. Mayne, head of NSN's Service Procurement & Standardization, executed the MSA on behalf of NSN.

8.     The MSA was, by its express terms, to have a three-year life, unless terminated earlier in accordance with its termination provisions. (¶ 21.1).

9.     The MSA's purpose was to define the terms and conditions governing

the parties' respective obligations with respect to TNS Services, which were anticipated to be ordered by NSN under the terms of supplemental agreements between the parties (¶ 2.1), of which, ultimately, there were five (5).

10.     The five (5) supplements to the MSA resulted in orders for TNS Services needed by NSN in order to satisfy its particular contractual commitments to T-Mobile and TNS' compensation therefor. McCann was involved in the review and TNS' approval of these supplements.

11.     At the time that the parties executed the MSA, the anticipated scope of TNS Services was limited to Austin/Houston, Texas and Kansas City, Missouri.

12.     The final geographical scope of TNS Services consisted of the following:

     (a)     Austin/San Antonio, Texas (TNS was Project Management Support Service Supplier ("PMSS") and the General Contractor ("GC"));

     (b)     Houston, Texas (TNS was the GC));

     (c)     Kansas City, Missouri (TNS was the PMSS and the GC);

     (d)     Chicago, Illinois (TNS was the GC);

     (e)     Detroit, Michigan (TNS was the GC); and

     (f)     Minneapolis, Minnesota (TNS was the GC).

13.     TNS' New Jersey office was involved in the day-to-day administration of the parties' MSA, as supplemented and modified.

14.     The MSA specified that it was to be governed and interpreted in accordance with "the laws of the State of Texas without regard to its conflict of law provisions." (¶ 28.13).

3

15. The MSA specified the procedure for incorporating additional or different services and establishing TNS' compensation therefor. (¶¶ 2.1, 2.4, & 11.5 – 11.8).

**Procedures Re: TNS' Claims for Changes, Extra Works, Extra Site Visits, and Pass-Through Costs**

16. The MSA specified the procedures to be followed with respect to "changes" to TNS Services (Art. 4), TNS' claims for out-of-scope work, including downtime and cost to correct inaccurate NSN Purchase Orders (¶11.8), TNS' claims for pass-through costs ("PTC") (¶11.6), and TNS' claims for extra site visits ("ESV") (¶11.5). (Hereinafter these categories of services, which include certain associated materials and equipment, are collectively referred to as "Out-of-Scope Services.")

17. Pursuant to Article 4 of the MSA, changes to the general scope of TNS Services could be requested by either party pursuant to a Change Order Request and, where the parties agreed upon the change, a NSN Purchase Order was to be issued prior to performance of the changed work.

18. If the parties could not agree upon a change proposed by NSN pursuant to Article 4, NSN had the right to direct that such change be performed by TNS via a "Change Directive," subject to TNS' right to pursue a claim for additional compensation and/or time. (¶4.2(d)). Article 4 changes could also be implemented via an e-mail directive by NSN to TNS, which was to be followed, within thirty (30) calendar days of TNS' completion of such changes, by a TNS Change Order Request and, ultimately, corresponding Purchase Order from NSN. (¶11.7).

19. The MSA-specified time frame for TNS to submit claims for payment for "Extra Works" was within thirty (30) calendar days of completion. (¶11.8).

4

20. The MSA-specified time frame for TNS to submit a Change Order Request for PTC to NSN was within thirty (30) calendar days of completion of such services. (¶11.6). The intent of this PTC provision was to require that TNS communicate its PTC claim in sufficient time to allow NSN to, in turn, pass through such TNS charges to T-Mobile.

21. As to TNS' entitlement to be compensated for ESV, TNS was required to submit a payment claim for same within thirty (30) calendar days of completion. (¶1.7 of Supplement # 1 to MSA).

22. The MSA further specified that, should TNS fail to comply with the thirty (30) day post-completion time constraints applicable to TNS' compensation for Out-of-Scope Services, TNS' entitlement would be deemed waived. (Articles 3, 4, and 11).

23. The intent of such time constraints was to avoid prejudice to NSN resulting from a lack of actual knowledge of potential extra costs, <u>not to simply penalize TNS and bestow a windfall on NSN.</u>

24. By virtue of TNS' daily reports and otherwise, NSN had contemporaneous knowledge of precisely what services (in-scope and out-of-scope) were being rendered.

25. Compensation for the foregoing various categories of TNS' Out-of-Scope Services was to be provided, ultimately, pursuant to NSN-executed Purchase Orders, Change Orders or Change Directives. (Art. 3).

26. NSN was to make payment within forty-five (45) days after issuance of a TNS invoice. (¶1.3(e) of Supplement # 1 to MSA).

<u>NSN's Knowledge of TNS' Out-of-Scope Services</u>

27. During the course of TNS' performance of TNS Services, NSN

5

authorized TNS to perform a very substantial amount of Out-of-Scope Services.

28. Over the course of TNS' performance, NSN altered the procedural requirements pertaining to TNS' Out-of-Scope Services, including, but not limited to:

(a) extending the time for TNS to submit claims or Change Order Requests;

(b) waiving any need for an executed Purchase Order or Change Order to recover compensation;

(c) advising TNS that, in connection with any PTC, TNS' submission of a request for compensation would be deemed timely if received in time for NSN to, in turn, invoice T-Mobile therefore; and

(d) authorizing TNS to perform such services on the basis of:

(i) informal verbal/written directions by NSN's project managers,

(ii) e-mail authorizations by NSN, or

(iii) NSN's verbal/written acceptance of TNS' written price quotes.

29. The parties' course of dealing and pattern of conduct reasonably induced TNS to believe that, as long as NSN had actual knowledge that TNS was performing Out-of-Scope Services, NSN would fairly compensate TNS for same.

30. NSN ratified, condoned, and accepted any untimely claims or Change Order Requests by TNS.

31. In fact, in excess of thirty-five percent (35%) of the total value of TNS Services constituted Out-of-Scope Services.

32. In each instance of TNS' performance of such Out-of-Scope Services:

(a) TNS complied with the MSA's procedural requirements, as modified or waived by NSN;

6

(b)  NSN had prior actual notice of such performance as well as TNS' contention that it constituted compensable, extra services; and

(c)  NSN had, in some manner, pre-approved and/or, after the fact, ratified TNS' performance as being compensable.

33.  All of TNS' Out-of-Scope Services and base-scope services were completed and fully compliant with all applicable contractual requirements, *i.e.*, there is no issue as to quality or timeliness, and such services benefited NSN and T-Mobile, which has had the beneficial use of such services for the last twenty-three (23) months.

**Breaches by NSN of the MSA, as Supplemented and Modified**

34.  NSN breached the parties' MSA, as supplemented and modified, in numerous respects, including, but not limited to, the following:

(a)  NSN failed to issue timely payments to TNS;

(b)  NSN failed to issue and/or timely issue warranted Change Orders to TNS;

(c)  NSN failed to timely respond to TNS' Change Order Requests;

(d)  NSN wrongfully rejected TNS' Change Order Requests;

(e)  NSN failed to issue and/or timely issue warranted Purchase Orders;

(f)  NSN failed to issue a Purchase Order to TNS notwithstanding a previously issued Change Order for such work;

(g)  NSN directed TNS to perform Out-of-Scope Services without strictly complying with contractual requirements;

(h)  NSN failed to compensate and/or timely compensate TNS for fully compliant and timely in-scope services and Out-of-Scope Services;

(i)  NSN improperly attempted to unilaterally alter the timing requirements for TNS' claims for extra services to TNS' disadvantage;

(j)    NSN issued Purchase Orders that did not match with the underlying Change Orders;

(k)    NSN rejected compensation for certain Out-of-Scope Services as to which Purchase Orders had issued, claiming that the underlying Change Order Requests were untimely;

(l)    NSN issued Purchase Orders to TNS in connection with matters covered by a proposed Supplement to the MSA, which had yet to issue; and

(m)    NSN failed to properly and effectively administer the procedures of the MSA, as supplemented and modified, pertaining to TNS' compensation, including, but not limited to, the following:

    (i)    Failing to timely issue accurate Purchase Orders to TNS and, as a result, requiring TNS to perform a substantial amount of compensable extra work correcting same;

    (ii)    Failing to have, at all times, a properly functioning e-mail system which would allow TNS to timely communicate to NSN information pertaining to its compensation for services rendered;

    (iii)    Failing to properly record and track the parties' communications regarding TNS' Out-of-Scope Services and compensation therefor;

    (iv)    Failing to timely provide TNS with updated reports on the status of TNS' Change Order Requests;

    (v)    Repeatedly losing TNS' Change Order Requests necessitating that TNS supply replacements, which NSN then misconstrued as new *untimely* Change Order Requests;

    (vi)    Failing to clearly and timely delineate and support its rejections of TNS' Change Order Requests;

    (vii)    Failing to generate "control numbers" which accurately identified TNS' Change Order Requests with resultant confusion and erroneous determinations by NSN as to TNS' entitlement;

    (viii)    Mischaracterizing TNS' submissions or the nature

8

of the services provided by TNS;

(ix)    Improperly rejecting TNS' proper claims for extra compensation, despite the fact that, upon information and belief, NSN had sought and received payment from T-Mobile for such uncompensated TNS charges;

(x)    Upon information and belief, negligently or deliberately misrepresenting to T-Mobile that it had paid or was going to pay TNS' PTC for which NSN had billed T-Mobile;

(xi)    Upon information and belief, negligently or deliberately engaging in a pattern of billing wherein T-Mobile was being routinely overcharged by virtue of NSN's intention not to pay TNS for the TNS charges NSN was billing to T-Mobile, plus NSN's mark-up;

(xii)    Depending upon which representative of NSN TNS was communicating with, regularly providing TNS with inconsistent positions regarding TNS' obligations and entitlement;

(xiii)    Failing to maintain accurate books and records as required by Attachment No. 6 to MSA Supplement # 4;

(xiv)    Unilaterally and persistently modifying procedures relating to the processing of claims by TNS for extra compensation and further confusing such process by providing for different procedures in different markets being serviced by TNS; and

(xv)    Requiring that TNS re-submit Change Order Requests in order to comply with NSN's unilateral changes to Change Order procedures.

35.    NSN rejected $2,324,493.07 due to TNS for Out-of-Scope Services on the incorrect basis that the related Change Order Requests were untimely, notwithstanding NSN's relaxation of any applicable time constraints.

36.    TNS' Out-of-Scope Services valued at $1,289,088.50 were wrongfully

9

rejected by NSN on the basis that they were covered within TNS' base-scope services.

37.    NSN's rejections of other TNS requests for compensation for Out-of-Scope Services cover a wide range of baseless allegations, including, but not limited to, lack of back-up documentation, claims that certain work was warranty work, duplicate Change Orders, and work completed by others.

38.    NSN has the right to audit TNS in order to verify the amounts claimed, but to date NSN has not availed itself of that right.

## Total Value of TNS' Performance Under the MSA

39.    The Base Purchase Order value of TNS' work is $29,654,824.00.

40.    NSN has paid, to date, the sum of $28,141,988.00, leaving a $1,512,836.00 balance due and owing to TNS for base-scope work.

41.    The total value of TNS' Out-of-Scope Services is $16,942,967.51.

42.    The total value of TNS' base-scope services and its Out-of-Scope Services is $46,597,791.51.

## Balance Due to TNS For Base-Scope Services

43.    NSN owes TNS a balance of $1,512,836.00 for TNS' base-scope services. Nevertheless, NSN has failed to make this $1,512,836.00 payment in breach of its payment obligation.

## Balance Due TNS For Services Rendered Beyond Base Scope

### A.    Amount Admitted by NSN to be Due TNS for Certain Out-of-Scope Services

44.    The aforesaid total base-scope value of $29,654,824.00 was supplemented by various Out-of-Scope Services totaling $16,942,967.51, of which amount NSN has admitted TNS entitlement in the sum of $5,615,683.71.

10

45.    Of this $5,615,683.71 entitlement, NSN has paid, to date, the sum of $3,939,482.00.

46.    NSN owes TNS a balance of $1,676,201.71 for TNS' admitted entitlement for certain Out-of-Scope Services.

**B.    Additional Amount Due to TNS for Out-of-Scope Services**

47.    Aside from the foregoing TNS entitlement of $1,512,836.00 for base-scope services and the $1,676,201.71 admittedly due it for certain Out-of-Scope Services, TNS is entitled to $11,327,283.80 for properly and timely performed additional Out-of-Scope Services.

48.    TNS has fully complied with all contract procedures pertaining to its entitlement to this $11,327,283.80. However, if there were any technical violations, NSN is precluded from asserting same by virtue of its contract breaches. Further, NSN is estopped from asserting them, has waived them and/or has ratified TNS' procedures and entitlement.

49.    NSN was well aware, before and during TNS' performance of its Out-of-Scope Services, that TNS reasonably expected to be paid extra for same by NSN and NSN made no attempt to correct this reasonable perception.

50.    In many cases, TNS has documented authorizations and approvals by NSN of these uncompensated Out-of-Scope Services, many being via e-mail, which is a specified methodology for authorizing extra services.

51.    NSN clearly benefited economically from all such uncompensated Out-of-Scope Services.

52.    To the extent that NSN has provided explanations for nonpayment of this

11

$11,327,283.80 debt, they have largely been predicated upon erroneous information, inclusive of incorrect information generated by its grossly negligent administration of the MSA, as supplemented and modified.

53.     NSN's $11,327,283.80 debt includes a substantial amount of PTC, which, upon information and belief, NSN passed along to T-Mobile, with its mark-up. Upon information and belief, T-Mobile paid NSN for the PTC. NSN failed to compensate TNS for the PTC.

54.     This $11,327,283.80 debt also includes a substantial amount for TNS' compensable "downtime" totaling $3,093,620.00. NSN's representatives have conceded partial liability for such downtime, but NSN has opted to not process payment for any part of this debt.

55.     This $11,327,283.80 debt also includes $824,676.00 in TNS administrative costs incurred in order to correct NSN's chronically flawed Purchase Orders and $520,726.00 in administrative costs to assemble, copy, and provide to NSN, at NSN's request, voluminous previously supplied documentation supportive of TNS' claims.

56.     In August 2007, NSN agreed that TNS should review and correct these Purchase Orders and that TNS would be compensated for such effort.

57.     Ultimately, TNS' personnel had reviewed 66,701 separate line items and, of those items, 5,775 were deleted and 34,447 were re-worked.

**Total Due TNS for Base-Scope Services and TNS' Admitted Entitlement for Certain Out-of-Scope Services**

58.     The combination of the amount owed by NSN to TNS for base-scope services ($1,512,536.00) and Out-of-Scope Services as to which NSN has admitted

12

TNS' entitlement ($1, 676,201.71) is $3,188,737.71.

59.    NSN has indicated to TNS a willingness to pay this $3,188,737.71 sum

provided, however, that TNS first provide a release of some additional alleged liability

of NSN, which would deprive TNS of additional compensation to which TNS is

contractually entitled.

60.    This decision by NSN to hold hostage payments admittedly due TNS

pending NSN's receipt of such a release is a manifest violation of NSN's payment

obligation under the MSA, as supplemented and modified, as well as NSN's implied

covenant of good faith and fair dealing.

### Grand Total Owed TNS for Base-Scope and All (Admitted and Contested) Out-of-Scope Services

61.    In sum, TNS is owed $1,512,836.00 for its base-scope services, its

admitted $1,676,201.71 entitlement for certain Out-of-Scope Services, and its

$11,327,283.80 entitlement for certain other Out-of-Scope Services. This amounts to a

grand total owed TNS of $14,516,321.51.

62.    NSN has not asserted, and is not entitled to, any credits or offsets against

such $14,516,321.51 indebtedness.

### Conditions Precedent

63.    All conditions precedent to TNS' bringing this action have been either

fully satisfied or expressly or impliedly waived by NSN.

### COUNT ONE
*(Breach of Contract – Base Scope Services)*

13

64.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

65.     TNS properly and fully performed all of its base-scope services and any procedural requirements of the MSA regarding TNS' entitlement to be paid this $1,512,836.00 were fully satisfied by TNS, waived by NSN, or NSN is estopped by its representations, acts and/or omissions from enforcing same, including, but not limited to, NSN's prior contract breaches.

66.     NSN has breached the MSA by, among other things, failing to pay TNS the $1,512,836.00 balance owed TNS for such base-scope services, which balance was due and owing as of November 1, 2008.

67.     NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

68.     Despite TNS' repeated and proper demands upon NSN for payment of this _bona fide_ $1,512,836.00 contractual obligation, NSN has improperly failed to make payment.

69.     As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

70.     As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

14

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, for $1,512,836.00 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

### COUNT TWO
*(Breach of Contract – TNS' Entitlement Admitted by NSN for Certain Out-of-Scope Services)*

71.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

72.     TNS, as aforesaid, properly and fully performed uncompensated Out-of-Scope Services having a value of $1,676,201.71, as to which NSN has acknowledged TNS' entitlement.

73.     NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

74.     Any procedural requirements of the MSA, as supplemented and modified, regarding TNS' entitlement to be paid this $1,676,201.71 by NSN were fully satisfied by TNS, waived by NSN, or NSN is estopped by its representations, actions and/or omissions from enforcing same, including, but not limited to, NSN's prior contract breaches.

15

75.     NSN has breached the MSA by failing to pay TNS this $1,676,201.71 balance owed for such services, which balance was due and owing to TNS as of November 1, 2008.

76.     Despite TNS' repeated and proper demands upon NSN for payment of this $1,676,201.71 obligation, NSN has failed to make payment.

77.     As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

78.     As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute this claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this matter, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, for $1,676,201.71 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT THREE
### (Breach of Contract – Miscellaneous Out-of-Scope Services)

79.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

80.   TNS properly and fully performed additional Out-of-Scope Services heretofore valued at $11,327,283.80, as to which NSN has not admitted liability, but as to which TNS is entitled.

81.   NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

82.   Any procedural requirements regarding TNS' entitlement to be paid this $11,327,283.80 were fully satisfied by TNS, waived by NSN, or NSN is estopped by its acts and/or omissions from enforcing same, including, but not limited to, NSN's prior contract breaches.

83.   NSN has breached the MSA by failing to pay TNS this $11,327,283.80, which was due and owing as of November 1, 2008.

84.   Despite TNS' repeated and proper demands upon NSN for payment of this $11,327,283.80 obligation, NSN has failed to make payment.

85.   As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

86.   As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute this claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this matter, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against

Defendant, Nokia Siemens Networks US, LLC, for $11,327,283.80 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT FOUR
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

87.    TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

88.    NSN impliedly covenanted under the MSA to deal with TNS fairly and in good faith.

89.    NSN breached this covenant of good faith and fair dealing by, among other things:

(a)    refusing to timely pay TNS the sum of $14,516,321.51 for the uncompensated TNS Services so valued;

(b)    withholding payment of undisputed TNS entitlement in an improper effort to economically coerce TNS into releasing its meritorious claims against NSN for additional NSN liability; and

(c)    billing to and, upon information and belief, collecting from T-Mobile uncompensated TNS Services.

90.    NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

91.    As a direct, proximate, and foreseeable result of NSN's breach of said implied covenant of good faith and fair dealing, TNS has been, and continues to be, damaged.

18

92.     Despite TNS' repeated and proper demands upon NSN for payment of this owed sum of $14,516,321.51, NSN has declined to make payment.

93.     As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute this claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this matter, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE,** Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, for $14,516,321.51 in compensatory damages or such greater or lesser sum as may be supported by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

### COUNT FIVE
### *(Quantum Meruit – Unjust Enrichment)*

94.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

95.     In addition to and in the alternative to TNS' other claims in this action and without waiving or diminishing such other claims, TNS brings this claim in quantum meruit for its uncompensated TNS Services.

96.     The uncompensated TNS Services were knowingly and willingly accepted and approved by NSN.

19

97.    While TNS was performing such uncompensated TNS Services, NSN knew that TNS was doing so with the reasonable expectation that NSN would be paying TNS therefor and, during the course of such TNS performance, NSN did nothing to suggest that TNS was mistaken in its perception that it was entitled to such payment.

98.    NSN has financially benefited from such uncompensated TNS Services in that, among other things, such services allowed NSN to satisfy its contractual commitments to T-Mobile for which NSN was compensated.

99.    Under these circumstances, NSN has unfairly and inequitably accepted and retained the substantial benefit of such uncompensated TNS Services, while refusing to fairly compensate TNS therefor.

100.    The reasonable value of such uncompensated TNS Services is $14,516,321.51.

101.    NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

102.    As a direct, proximate, and foreseeable result of the foregoing, NSN has been, and continues to be, unjustly and unfairly enriched to the foreseeable financial detriment of TNS.

103.    Despite TNS' repeated and proper demands upon NSN for payment of this $14,516,321.51 obligation, NSN has failed to make payment.

104.    As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claim against NSN. Consequently, NSN is liable to TNS for its

reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, in for $14,516,321.51 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT SIX
### (Breach of Contract – Implied in Fact)

105. TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

106. In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim in quantum meruit for the uncompensated TNS Services.

107. The aforesaid representations, actions, and omissions of NSN have created an implied-in-fact contract or contracts with TNS pursuant to the terms of which TNS was entitled to be fully compensated for its uncompensated Out-of-Scope Services incurred on NSN's behalf.

108. Pursuant to such implied-in-fact contract(s), TNS performed substantial Out-of-Scope Services for which NSN realized a substantial, economic benefit.

109. The reasonable and agreed upon value of such uncompensated Out-of-

Scope Services is $11,327,283.80.

110.   NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

111.   Despite TNS' repeated and proper demands upon NSN for such compensation, NSN, in breach of such implied-in-fact contract(s), has improperly declined payment.

112.   As a direct, foreseeable, and proximate result of NSN's breach of its payment obligations under the parties' aforesaid implied-in-fact contract(s), TNS has been, and continues to be, damaged.

113.   As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor for $11,327,283.80 in compensatory damages or such greater or lesser amount as may be justified by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other and additional relief as the Court deems just and proper.

22

## COUNT SEVEN
### (Promissory Estoppel)

114.   TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

115.   In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim for uncompensated Out-of-Scope Services.

116.   NSN, in order to induce TNS to perform uncompensated Out-of-Scope Services, as aforesaid, promised TNS that such work would be properly compensated.

117.   NSN should have reasonably expected that said promises would induce TNS to undertake and complete said uncompensated Out-of-Scope Services.

118.   TNS reasonably relied upon such promises by NSN in undertaking to perform, and completing, such uncompensated Out-of-Scope Services.

119.   Following TNS' performance of such uncompensated Out-of-Scope Services, NSN improperly breached its aforesaid promises of payment and improperly refused to compensate TNS.

120.   NSN's refusal to honor its aforesaid payment promises constitutes gross misconduct from which NSN, to the detriment of TNS, has realized an unfair and unwarranted financial benefit.

121.   In order to prevent gross injustice and promote fundamental fairness, NSN should be compelled to fairly compensate TNS for such uncompensated Out-of-Scope Services having a reasonable value of $11,327,283.80.

122.   NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

23

123.    Despite TNS' repeated and proper demands upon NSN for payment of this $11,327,283.80 obligation, NSN has failed to make payment.

124.    As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

125.    As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

WHEREFORE, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor for $11,327,283.80 in compensatory damages or such greater or lesser amount as may be justified by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

## COUNT EIGHT
### (Negligent Misrepresentation)

126.    TNS incorporates herein by reference each of its prior allegations with the same force and effects as if fully set forth herein.

127.    In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim for the uncompensated Out-of-Scope Services.

24

128. NSN, by its aforesaid negligent misrepresentations foreseeably induced TNS to perform uncompensated Out-of-Scope Services.

129. TNS reasonably and foreseeably relied upon such negligent misrepresentations by NSN in undertaking and completing its uncompensated Out-of-Scope Services having a reasonable and agreed upon value of $11,327,283.80.

130. NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

131. Despite TNS' repeated and proper demands upon NSN for payment of this $11,327,283.80 obligation, NSN has failed to make payment.

132. As a direct, proximate, and foreseeable result of such negligent misrepresentations by NSN, TNS has been, and continues to be, damaged.

133. As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor for $11,327,283.80 in compensatory damages or such greater or lesser amount as may be justified by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas

25

Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

## COUNT NINE
### (Equitable Fraud)

134. TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

135. In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim in connection with the uncompensated Out-of-Scope Services.

136. NSN, at various times, falsely assured TNS that it would be compensated for Out-of-Scope Services to be performed and that NSN would not insist upon strict compliance with any otherwise applicable procedural requirements.

137. The aforesaid misrepresentations were made by NSN with the intention that TNS rely upon same.

138. TNS did, in fact, reasonably rely upon such misrepresentations by NSN in undertaking to perform and complete its Out-of-Scope Services.

139. As a direct, proximate, and foreseeable result of such misrepresentations, TNS has been, and continues to be, damaged.

140. Despite TNS' repeated and proper demands for the promised extra compensation for its Out-of-Scope Services, NSN has declined to make payment.

141. As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus

26

additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE,** Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor reforming the MSA, as supplemented and modified, so as to modify the claims-limitations provisions to the extent necessary to allow Plaintiff to fully recover the compensation to which Plaintiff was promised by Defendant, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

The undersigned is hereby designated trial counsel in this matter.

**FLORIO PERRUCCI STEINHARDT & FADER, LLC**

Attorneys for Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists

By: _____
JOHN F. NEARY

Dated: October 23, 2009

27

## R. 4:5-1 CERTIFICATION

The undersigned hereby certifies that, to the best of his knowledge, information, and belief, the within matter in controversy is not the subject of any other court action or arbitration proceeding, now pending or contemplated, and that, as of this date, no other parties should be joined in this action.

FLORIO PERRUCCI STEINHARDT
& FADER, LLC

Attorneys for Plaintiff, Advanced
Technologies and Installation Corporation
d/b/a Telecom Network Specialists

By: _____
JOHN F. NEARY

Dated:  October 23, 2009

28