**\*\*\*NOT FOR PUBLICATION\*\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : |  |
| ADVANCED TECHNOLOGIES AND | : |  |
| INSTALLATION CORPORATION, a | : |  |
| Washington Corporation doing business | : |  |
| as TELECOM NETWORK SPECIALISTS, | : | Civil Action No. 09-cv-6233 (FLW) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : | **OPINION** |
| NOKIA SIEMENS NETWORKS US, LLC, | : |  |
| a Delaware Limited Liability Company, | : |  |
|  | : |  |
| Defendant. | : |  |
| _____ | : |  |

**WOLFSON, United States District Judge:**

Presently before the Court are two motions: a motion to remand to the Superior Court of New Jersey, Law Division, Somerset County, filed by Plaintiff Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists ("Telecom") and a motion to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) filed by Defendant Nokia Siemens Networks US, LLC ("Nokia"). Telecom asserts claims sounding in breach of contract, negligent misrepresentation, and equitable fraud, along with other quasi-contract and contract-related claims. These claims arise out of an agreement between Telecom and Nokia, in which Nokia contracted with Telecom for the provision of telecommunications infrastructure in various cities throughout the United States. For the reasons that follow, the Court denies Plaintiff's motion to remand and grants Defendant's motion to transfer.

# I.     Statement of Facts and Procedural History

Plaintiff Telecom, a Washington corporation, entered into a written Master Services Agreement ("Agreement") to provide telecommunications infrastructure, such as cellular telephone towers, for Defendant Nokia's client, T-Mobile Wireless/T-Mobile USA ("the Project"). Compl., ¶¶ 1-2. Telecom's headquarters are located in Richardson, Texas and Nokia maintains an office nearby in Irving, Texas.[1] According to Nokia, the proximity between these two offices is one of the reasons Nokia chose Telecom as its infrastructure provider. Pemberton Decl. in Further Support of Def. Mot. Trsf. ("Pemberton Decl."), ¶ 4.

*Contract Negotiations*

The parties agree that many of the initial contract negotiations were conducted via e-mail or phone in several locations throughout the United States, but disagree as to whether some of the negotiations are properly linked to New Jersey. See Pemberton Decl., ¶ 5 (asserting that Nokia employees executed Agreement in Atlanta, Georgia); id. at ¶ 6; Hober Decl. ¶ 10 (noting contract negotiations on behalf of Telecom from an Atlanta, Georgia office). Telecom asserts that its then-CEO John J. McCann ("McCann") engaged in some negotiations with Nokia from Telecom's New Jersey headquarters located in Raritan, New Jersey, and that he executed the agreement at

---

[1]     Nokia is a wholly-owned subsidiary of Nokia Siemens Network Holdings USA Inc. ("NSN Holdings"), a Delaware corporation with its principal place of business also in Delaware. Behm Decl. at ¶¶ 5 -8.

that location.[2]  Id. at ¶¶ 4, 6; McCann Decl. at ¶¶ 4, 23.  Though Nokia does not

challenge that McCann executed the Agreement in New Jersey and that he engaged

in e-mail and/or telephone conversations from New Jersey, it challenges Telecom's

assertion that the New Jersey office belongs to Telecom.  Rather, Nokia points out, that

office belongs to Telecom's affiliate, Conti Communications, Inc. ("Conti").  Telecom

concedes that the New Jersey location is Conti's principal place of business, but

contends that Conti's office was shared with Telecom.  McCann Decl. at ¶ 4.  In

addition, according to McCann, Nokia understood at the time of contracting that Conti

would perform services under the Agreement as an affiliate of Telecom.  Id. at ¶¶ 19-

21.  Conti, however, is not party to the Agreement, nor a party in this case.

*The Agreement*

Under the Agreement, Telecom was authorized to supply telecommunications

infrastructure and related services.  Melodia Cert., Exh. A ("MSA") at 1.  The

Agreement provided that Telecom would receive payment for services requested by

purchase order.  Id. at Art. 3.1 ("[Telecom] shall only perform Services specified in a

Purchase Order.")  Telecom refers to these services as "base scope" services.  See

Compl. at ¶ 43.  The Agreement also provided that "[Telecom] shall not receive

additional payment for Services or Work outside the Scope of Work unless [Nokia]

approves the Work in accordance with the process described [elsewhere in the

Agreement]."  MSA at Art. 3.2.  Telecom refers to these services as "out-of-scope"

_____

[2]     McCann no longer serves as Telecom's CEO, but works as a consultant to
Telecom's parent corporation, Quanta Wireless Solutions, Inc.  McCann Decl. at ¶ 2.

services.

The Agreement provided that Texas law governed "without regard to its conflict of law provisions," MSA at Art. 28.13, and also included a forum selection clause. This clause grants Nokia the unilateral right to choose the forum in which suit relating to the Agreement could be brought:

> If a dispute arises between the Parties, each Party shall designate a senior executive representative to schedule a meeting (via telephone or in person) to discuss such dispute, and to attempt a resolution of the matter. If a dispute cannot be resolved within twenty-one (21) calendar days of the date of a written notice, then any dispute shall, unless [Nokia] directs otherwise, be finally settled by arbitration .... The place of arbitration shall be Dallas, Texas .... [Nokia] may elect not to arbitrate the dispute, and if so, [Nokia] may determine the city in which proceedings can be filed at is sole discretion. [Telecom] may request notification of [Nokia's] election to arbitrate, and within fourteen (14) days, [Nokia] shall notify [Telecom] of its election.

MSA at ¶ 27.1.

*Performance*

McCann avers that most of Telecom's performance of the Agreement was actually performed by Conti. Specifically, he states that Conti "performed and paid for approximately ninety percent (90%) of the on-site [services in the Texas area] and off-site [services] and it has also suffered approximately ninety percent (90%) of the financial loss included in [Telecom's] claims in this litigation." McCann Decl. at ¶ 34. To be clear, the Agreement initially provided that the geographic scope of Telecom's on-site services was limited to Austin, Texas, Houston, Texas, and Kansas City, Missouri. Compl., ¶ 11. That scope was later expanded to include cites in Illinois, Michigan, and

4

Minnesota. Id. at ¶ 12. But, McCann continues, a fair portion of the work was completed off-site in the New Jersey office.

Indeed, McCann appears to suggest that Telecom and Conti operated effectively as one corporation in that McCann served as the CEO for both companies, his salary was paid by Conti, Conti constructed turnkey telecommunications infrastructures for Telecom, and Conti employees provided administrative and operational support for Telecom on the Project. See id. at ¶¶ 2, 4, 32, 36, 48. McCann avers that all financial reports related to the Nokia project were generated from the New Jersey office. Id. at ¶ 49. At least eight Conti employees worked on the project from the New Jersey office, which employees currently reside in New Jersey. Id. at ¶ 52. All other records related to the Nokia project were, and continue to be, housed at the New Jersey office. See id. at ¶ 59.

*The Payment Dispute*

According to the Complaint, Nokia breached the Agreement by refusing to pay Telecom for numerous base and out-of-scope services amounting to over 3 million dollars. Nokia generally asserts that any payment disputes that arose during the performance of the contract were addressed by Telecom personnel in the Texas office, namely, David Atkins, Mauricio Villalon, Larry Sutherland, and Julie Vines. Pemberton Reply Decl., ¶ 7(ii). Nokia submits proof of communications, including e-mails, with these personnel in July and September 2008, id. at ¶ 7, and other Texas personnel in early 2009. Id. at ¶ 7(v). Telecom asserts McCann issued the approvals from the New Jersey office for work exceeding $15,000. McCann Decl. at ¶ 50. In

5

addition, Telecom notes that several other employees prepared the financials relating to the services for which Telecom has not received payment.   See id. at ¶ 49.

*Forum Selection*

On June 18, 2009, David Brittain, Jr., Esq., Telecom's in-house counsel based in its Atlanta office, informed Nokia's counsel, Roland J. Behm, Esq., that Telecom sought arbitration under Article 27 of the Agreement.  See Brittain Decl., ¶ 6; id., Exh. A at 1.  Behm responded by a letter dated June 30, 2009, indicating that, prior to either party instituting arbitration or litigation, Article 27 mandated that the senior executives of Telecom and Nokia first meet to attempt to resolve the dispute.  Id., Exh. B at 1.  Shortly thereafter, on July 2, 2009, Telecom notified Nokia that it designated McCann to attend the executive meeting, and that it preferred for the meeting to be held in person rather than by telephone.  Id., Exh. C.  The meeting was subsequently held on September 10, 2009 in Richardson, Texas, and no resolution was reached.  Id., Exh. D at 1.

Several days following the meeting, on September 17, 2009, Telecom formally demanded arbitration of the parties' dispute.  Id.  Nokia rejected this request, by letter dated September 25, 2009, and presented a settlement offer.  Id., Exh. E at 2.  Nokia, further, indicated that it would inform Telecom of its chosen forum within fourteen days (14) of that letter should Telecom reject its settlement offer:

> If [Nokia] receives no response from [Telecom] to this settlement offer within fourteen days, the offer will be withdrawn.  After that time and as per Section 27.1 of the referenced agreement, [Nokia] will inform [Telecom] of the city in which [Telecom] can institute proceedings on this

matter.

Id. Telecom never responded to the offer, and Nokia never notified Telecom of its chosen forum. Id. at ¶ 11.

*Procedural History*

Thirty days after the last correspondence between the parties, Telecom filed the instant complaint in the Superior Court of New Jersey, Law Division, Somerset County, on October 23, 2009, alleging that Nokia breached the Agreement, negligently misrepresented that payments would be made for services, and defrauded Telecom. Compl. ¶¶ 64-141. The suit was removed to this Court by Defendant, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, on December 10, 2009. On January 6, 2010, Defendant filed a motion to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Subsequently, on January 8, 2010, Plaintiff moved to remand based on Defendant's purported failure to plead diversity of citizenship of the parties.

## II.    Motion to Remand

District courts have original jurisdiction over matters in which the amount in controversy exceeds $ 75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332. In determining whether diversity exists, the Court's inquiry must focus on facts that existed at the time the Complaint was filed. Colmer v. ICCS Co., LLC, Civil Action No. 08-2737, 2009 WL 1973547 at *1 (D.N.J. Jul. 07, 2009) (citing Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997)). While the burden to prove the existence of jurisdiction is generally on the plaintiff, where a timely challenge to removal has been filed, the burden rests on the removing defendant to

demonstrate jurisdiction.  See id.

Telecom argues that the parties are not diverse and, therefore, that Nokia's removal was improper under 28 U.S.C. § 1331.   In its Notice of Removal, Nokia indicated that Nokia is a wholly-owned subsidiary of NSN Holdings, and that NSN Holdings is a Delaware corporation with a principal of business also in Delaware. Notice of Removal, ¶ 3.  Telecom contends that the Notice failed to identify each of its members and their citizenship, and that this omission is critical because the citizenship of an LLC, such as Nokia, is determined by reference to the citizenship of each of its members.  Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).  In that Nokia is a limited liability company, Telecom argues, Nokia's failure to identify its members and their citizenship should be fatal to its Notice of Removal.

The glaring problem with Telecom's argument is that Nokia indicated in its Notice that it is *wholly-owned* by NSN Holdings.  That means that it has only one member.  Because Nokia is wholly-owned by a Delaware corporation with a Delaware principal place of business, Nokia is deemed a corporate citizen of Delaware.  Id. ("[t]racing citizenship through the layers" of single-member limited liability companies); R & R Capital v. Merritt, No. 07-2869, 2007 WL 3102961 at *5 (E.D.Pa. Oct. 23, 2007) ("[T]he citizenship of a limited liability company is determined like that of a limited partnership, by imputing to it the citizenship of its members.") (collecting

cases).[3] Telecom, being a Washington corporation with a principal place of business in Texas, is deemed a citizen of both of those states. Therefore, I conclude that Nokia has sufficiently demonstrated that the parties are diverse.[4]

Telecom further argues that the removal notice is fatally defective because Nokia failed to set forth its principal place of business in the Notice of Removal. This argument is frivolous; the Notice of Removal plainly states that Nokia is wholly-owned by NSN Holdings and sets forth the principal place of business of that parent corporation. Given its wholly-owned status, Nokia was not required to set forth its own principal place of business in the Notice of Removal. Thus, I deny Telecom's motion to remand and, consequently, its request for fees and costs.

## III.     Motion to Transfer

### A.     Standard of Review

When venue is proper in a particular district, a motion by a party seeking to transfer is governed by 28 U.S.C. § 1404(a). Section 1404(a) vests a district court with discretion "to adjudicate motions to transfer according to an individualized, case by case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh

---

[3]     Telecom also suggests that Nokia may be a citizen of Georgia because it lists its principal place of business as Atlanta on its Georgia foreign business registration form. See Neary Decl., ¶ 3; id., Exh. B. This does not alter my analysis because Nokia's LLC status dictates that its citizenship refers back to that of its sole member.

[4]     For this reason, I reject Telecom's related argument that Nokia's failure to specifically state that diversity existed at the time the suit was filed is fatal. As noted, I conclude that Nokia's description of itself as "wholly-owned" made clear its citizenship status as of the date the suit was instituted.

Corp., 487 U.S. 22, 23 (1998) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

Specifically, section 1404(a) provides: "for the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district

... where it might have been brought."  28 U.S.C. § 1404(a).

The purpose of section 1404(a) is to protect litigants, witnesses and the public

against unnecessary inconvenience and expense.  Van Dusen, 376 U.S. at 616.  When

deciding a motion to transfer venue, "courts have not limited their consideration to the

three enumerated factors in § 1404(a) (convenience of the parties, convenience of

witnesses, or interests of justice)."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879

(3d Cir. 1995).  Instead, courts have considered "all relevant factors to determine

whether on balance the litigation would more conveniently proceed and the interest of

justice be better served by transfer to a different forum."  Id.; see also Clark v. Burger

King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003).  Consequently, the "analysis is

flexible and must be made on the unique facts of each case."  Calkins v. Dollarland,

Inc., 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citing Piper Aircraft Co. v. Reyno, 454

U.S. 235, 249-50 (1981)).  Finally, the burden of establishing the need for transfer rests

on the moving party.  Jumara, 55 F.3d at 879.

The first step in a court's analysis of a motion to transfer is to determine

whether venue would be proper in the proposed transferee district.  Clark, 225 F. Supp.

2d at 337.  If so, the court must next establish whether the transfer is in the interest

of justice.  Id.  To make that determination, the court "must consider both the private

and public interests effected by the transfer."  Id; see also Gulf Oil v. Gilbert, 330 U.S.

501, 508-09 (1946) (evaluating private and public interest factors effected by transfer). The private interests include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." <u>Jumara</u>, 55 F. 3d at 879 (internal citations omitted). Public factors to be considered include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." <u>Id.</u> at 879-80 (internal citations omitted).

## B.    Propriety of Venue in Transferee District

First, the Court must consider whether this action could have been brought in the Northern District of Texas. Section 1391(a) of Title 28 of the United States Code provides that a civil action based on diversity may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (emphasis added). As will be demonstrated in the ensuing discussion of the Jumara private and public interests, a substantial part of the alleged events or omissions, *i.e.*, Nokia's refusal to pay Telecom for work on the Project, occurred in the Northern District of Texas. Thus, I conclude that venue is proper in that venue, and now turn to the private and public interests to determine if transfer would be in the interest of justice.

## C.    Private Interests

As noted, the private interests under Jumara include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." 55 F. 3d at 879 (internal citations omitted). I address the pertinent factors in turn.

*Plaintiff's Forum Preference*

Defendant argues that Plaintiff's choice of forum should be given little deference because Plaintiff chose to litigate in a forum which is not its home state. However, a plaintiff's choice of forum is a "paramount consideration" and should not be "lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). Indeed, "a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only

when the balance of the public and private interests clearly favors an alternate forum."

Windt v. Qwest Communications Intern., Inc., 529 F.3d 183, 190 (3d Cir. 2008). Where, however, the plaintiff's chosen forum is not its home state, its choice "deserves less deference" and it may "bolster the amount of deference due their choice [only] by making a strong showing of convenience." Id.

Here, that Telecom shared office space with its affiliate, Conti, while working on the Project suggests that some weight should be afforded its forum choice. As noted, Telecom's principal place of business is in Texas, but McCann worked primarily out of Conti's New Jersey office.

While Nokia argues that Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473 (D.N.J. 1993), counsels against considering the location of a related corporation in the plaintiff's choice-of-forum analysis, that case is readily distinguishable on its facts. In that case, Plaintiff Ricoh Co. relied on the location of its New Jersey subsidiary, Ricoh Corp., although the latter was not party to the lawsuit, had no proprietary interest in the patent in dispute in that matter, and had not participated "in any way" in the design, development or manufacture of the patent. Id. at 481. Here, by contrast, Telecom has demonstrated by way of McCann's Declaration that Conti performed portions of the Agreement and is entitled to payment for its work on the Project. McCann Decl. at ¶ 34 ("Conti . ... performed and paid for approximately ninety-percent (90%) of the on-site and off-site [services] and it has also suffered approximately ninety percent (90%) of the financial loss included in [Telecom's] claims in this litigation."). It is true that Conti is not named in the Complaint, and could not be because it is not

party to Agreement. Nonetheless, Telecom has pointed to facts demonstrating that the relationship between Telecom and Conti is more involved and relevant to the claims asserted here than the relationship between Ricoh Co. and its subsidiary in Ricoh.

Given that Telecom has some connection to New Jersey through Conti's work and injury, but also acknowledging that Telecom's principal place of business is in the Northern District of Texas, I conclude that Telecom's forum selection is entitled to considerable, though less than paramount, deference. To be sure, even where it is undisputed that the plaintiff has filed in his home state, its choice may not be given dispositive weight. Delta Airlines, Inc. v. Chimet, S.P.A., et al.,– F.3d –, 2010 WL 3385537,* 5 (3d Cir., Aug. 30, 2010) (citing Piper Aircraft Co. v. Reno, 454 U.S. 235, 257 n.23 (1981)).

*Defendant's Forum Preference*

Defendant's preference for the Northern District of Texas forum is also entitled to considerable weight because its operations relevant to the Project were based out of its Irving, Texas office. More importantly, the parties' expectations at the time of contracting were that Nokia's forum preference would outweigh Telecom's preference. As noted *surpa*, the Agreement provides that Nokia "may elect not to arbitrate the dispute, and if so, [Nokia] may determine the city in which proceedings can be filed at is sole discretion. [Telecom] may request notification of [Nokia's] *election to arbitrate*, and within fourteen (14) days, [Nokia] shall notify [Telecom] of *its election*." (emphasis mine). Telecom suggests that it is inappropriate to rely upon this forum-selection clause because Nokia failed to notify Telecom of its choice of forum within the fourteen-

day window provided in the Agreement.[5]  Telecom misreads the clause, however,

because the fourteen-day time frame applies to Nokia's decision to arbitrate—not its

choice of forum.  In any event, I need not rule on the applicability of the clause at this

juncture.  What is pertinent here is that Telecom understood at the time of contracting

that the Northern District of Texas was a possible, and even likely, forum in which it

could be subjected to suit.  And, further, there is the possibility that Nokia would be

entitled to enforce the clause and require the Northern District of Texas as the forum

for the parties' dispute.  Thus, while I do not rule upon the applicability of the clause

or construe it here, I conclude that the existence of the clause buttresses Defendant's

preference here.

*Whether the Claim Arose Elsewhere*

Nokia argues that Telecom's claims arose in locations other than New Jersey,

noting that the majority of the work on the Project was performed in Texas and that

any "back-office" work performed by Conti is irrelevant because Conti is not party to

the Agreement.  On a breach of contract claim, "courts consider several specific factors

that relate to where the claim arose, including (1) where the contract was negotiated

or executed; (2) where the contract was to be performed; and (3) where the alleged

---

[5]        Though the Agreement links the fourteen-day time frame to Nokia's
election to arbitrate, Nokia's settlement offer letter referenced a second fourteen-day
period during which the settlement offer would remain open.  The letter, further,
indicated that, if Telecom rejected the settlement offer, Nokia would "inform [Telecom]
of the city in which [Telecom] can institute proceedings on this matter."  Shortly after
the fourteen-day period referenced in this letter, Telecom instituted suit without
receiving notification from Telecom as to what forum Nokia selected.

breach occurred." <u>S.O.S. Salson Inc. v. Academy Corp.</u>, Civil No. 09-2159, 2009 WL

3110952, *5 (D.N.J. Sept. 23, 2009) (quoting <u>Allianz Life Ins. Co. of N. Am. v. Estate

of Bleich</u>, No. 08-cv-668, 2008 U.S. Dist. LEXIS 90720, at *14, 2008 WL 4852683

(D.N.J. Nov. 7, 2008) (internal quotation marks omitted)).[6]

While the parties dispute some facts, it is clear that the negotiations,

performance of the Agreement, and the breach occurred in several locations, but that

the locus was in Texas. It is undisputed that many contractual negotiations took place

over the phone and in emails and some in-person meetings were held in Texas. The

only key link to New Jersey is that McCann executed the Agreement there. With

respect to performance, the Project was completed in Texas as well as other non-New

Jersey states such as Illinois. Telecom contends that Conti's back-office work in New

Jersey is significant, but I find that it does not overshadow the on-site work completed

by Telecom in Texas and other states.

Finally, as to the alleged breach, Telecom notes that McCann signed off on

Telecom authorizations to complete the disputed work and that he conferred with New

Jersey personnel in compiling financials related to that work. But the critical facts

---

[6] My analysis here focuses on Plaintiff's breach of contract claim because the remaining claims arise out of the same set of facts and, to some degree, depend upon the court's resolution of the breach of contract claim. For example, Plaintiff's negligent misrepresentation claim is based on alleged misrepresentations regarding payment under the Agreement. In addition, Plaintiff's quasi-contractual claims revolve around the same disputed payments that form the basis of Plaintiff's breach of contract claim.

have to do with Nokia's denial of payment, which decision came out of its Texas office.[7] I, further, find it important that McCann traveled to Richardson, Texas in an attempt to amicably resolve the payment dispute. Indeed, Telecom specifically requested that this meeting take place in person rather than telephonically and Telecom raised no issue with regard to the meeting taking place in Texas. Thus, I conclude that this factor favors transfer to the Northern District of Texas.

*Convenience of the Witnesses*[8]

Nokia specifically references several Telecom and Nokia employees who reside in Texas, whose testimony is pertinent to the disputed payments. Pemberton Decl. at ¶ 20. The Telecom witnesses include Mauricio Villalon, Telecom's Vice President of Operations/Business Development, who was Nokia's primary contact throughout the term of the Agreement, and at least three other Telecom accounting employees that received and sent correspondence relating to the billing disputes. Id. Further, Nokia names six of its current employees whose testimony is relevant to the suit, including Mike McCormick, its "Project Director in charge of overseeing [Telecom's] work under

---

[7]     To be clear, Nokia's office is located in Richardson, Texas, which is within the Northern District of Texas. While the on-site work was completed in Houston, which is in the Southern District, my focus here is on the allegations related to the breach and the failed settlement negotiations in Richardson. For this reason, I reject Telecom's intimation that the Southern District of Texas has more connection to the parties' dispute than the Northern District.

[8]     As the parties' "convenience of the parties" arguments speak only to witness production, I do not separately address that factor. The Court notes; however, that Telecom would be hard pressed to argue its inconvenience because, as noted, it understood at the time of contracting that it could be hailed into the Texas forum.

the [Agreement] in the Southwest."[9]  Id.  This showing by Nokia is sufficient to demonstrate that key witnesses would be inconvenienced by the New Jersey forum, despite Telecom's arguments to the contrary.  The Third Circuit recently held in Chimet, supra, that a defendant satisfied its burden of persuasion on this factor by "identif[ying] witnesses it intended to depose and proffer[ing] . . . the information that it expected to obtain." Id. at *9.[10]  No further detail is required.

Moreover, Telecom points to only one Telecom witness that resides in New Jersey (i.e., McCann).  While Telecom notes that several Conti employees, presumably residing in New Jersey, worked on the Project, it contends that "[g]iven the lack of discovery in this case, . . . it would be premature to try to identify 'key' witnesses in this case."  McCann Decl. at ¶ 65.  And, Telecom continues, current employees of Telecom and Nokia "could readily be produced for trial by their employer ...."  Id. at ¶ 64.  Lastly, Telecom references other Nokia employees based in Atlanta, Chicago, and Redmond, as well a third-party witnesses based in Chicago and Detroit.  Id. at ¶¶ 66-68, 73.

It is clear that the witnesses cited to by Telecom would be equally inconvenienced by the New Jersey or Northern District of Texas forum, except for McCann who resides in New Jersey.  In my view, the inconvenience of the several

---

[9]    Another pertinent witness specifically named by Nokia is Larry Taylor, its executive who met with McCann in 2009 in Richardson, Texas in an attempt to amicably resolve the dispute.

[10]    While Chimet is a *forum non conveniens* case, its analysis is instructive on the application of the private and public factors here.

Telecom and Nokia witnesses specifically referenced by Nokia outweighs any potential inconvenience to McCann. Thus, I find this factor favors transfer to the Northern District of Texas.

*Location of Books and Records*

This factor is considered by courts only to the extent that files could not be produced in the alternative forum. In this current electronic age, it is difficult to imagine that business files can not be produced in an alternate forum. Here, both parties argue that their records are located in their preferred forum; thus, I find this factor neutral because whether this case was transferred or not, one party would be required to transport their documents. Accord Mercedes-Benz USA, LLC v. ATX Group, Inc., Civil No. 08-3529, 2009 WL 2255727, *4 (D.N.J. Jul. 27, 2009) ("The location of the disputed records is . . . neutral since there is nothing to suggest that the records, which are admittedly in electronic form, cannot be easily transmitted ....").

In sum, I conclude that the private interest factors favor transfer to the Northern District of Texas.

### D. Public Interests

As noted, the public factors to be considered by courts include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F. 3d at 879-80 (internal citations

19

omitted).  Other public factors include, but are not limited to, "the unfairness of burdening citizens in an unrelated forum with jury duty."  Windt, 529 F.3d at 192 (citing Gulf Oil, 330 U.S. at 508-09).  "In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum."  Chimet, supra, at *10.  The parties' arguments here center on court congestion, local interest, and governing law.

As an initial matter, the Court notes that the parties spend much briefing disputing the validity of court congestion statistics cited by each other.  The Court finds this practice unhelpful and a distraction from more pertinent issues.  That said, it is clear from the record that the District of New Jersey is generally, though not significantly, more congested than the Northern District of Texas.

In terms of local interest, this factor tips in favor of transfer.  As discussed in connection with the private Jumara factors, Telecom is neither based nor maintains an office in New Jersey.  More importantly, it is not formally registered to do business in the state.  Thus, although its affiliate Conti has an interest in the dispute and is based in New Jersey, I find it inappropriate to rely solely upon Conti's involvement with the state as a basis for finding that New Jersey has an interest in this litigation.

The Agreement provided that Texas law governs this suit, and Defendant suggests that a Northern District of Texas court is more familiar with Texas law.  In my view, federal courts are accustomed to applying the law of various states.  However, this factor slightly favors transfer in that judges in the Northern District of Texas

would be more familiar with Texas law simply because they have greater occasion to apply it than do District of New Jersey judges.

In addition, the Court finds that a New Jersey community would be unfairly burdened by jury service in this case. The alleged breach did not take place in New Jersey, and Telecom is neither a New Jersey corporation nor does it maintain its principal place of business therein. "[W]ithout a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service." Windt, 529 F.3d at 193.

Thus, I conclude that the public factors also militate toward transfer to the Northern District of Texas and, accordingly, grant Defendant's motion to transfer this suit.

IV.   **Conclusion**

For the foregoing reasons, the Court denies Plaintiff's motion to remand and grants Defendant's motion to transfer.

Dated: September 2, 2010                                  /s/ Freda L. Wolfson
                                                        Honorable Freda L. Wolfson
                                                        United States District Judge